IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(BOSTON)

|  |  |  |
|---|---|---|
| FAY GLICK,<br>on behalf of herself and all others<br>similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BANKERS LIFE & CASUALTY<br>INSURANCE COMPANY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____ |

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Fay Glick, on behalf of herself and a class of all similarly situated policyholders, brings this action against Defendant Bankers Life & Casualty Insurance Company ("Bankers") for (1) injunctive and declaratory relief and damages arising from Bankers' systematic business practices of delaying and/or denying the payment of claims for benefits provided for under its healthcare insurance policies; and (2) recovery of undisclosed interest that Bankers charged on any policyholders who paid premiums on a monthly (or "modal") basis (as opposed to paying premiums on an annual basis).

The following facts and claims are based upon personal knowledge as to matters relating to Ms. Glick, and upon information and belief as to all other matters based upon the investigations of counsel as follows:

### PARTIES

1. Plaintiff Fay Glick resides in Newton, Massachusetts, and is insured under a Home Health Care Policy No. 209,022,093 issued by Defendant on January 29, 2009 with a

Maximum Benefit Limit of $73,000 (payable with up to $100 per day with a Maximum Monthly benefit of $3,100). This policy replaced a pre-existing policy Ms. Glick had with Defendant.

2. Defendant Bankers Life & Casualty Insurance Company is an Illinois corporation, with a principal place of business in Chicago, Illinois, doing business nationally. On information and belief, Defendant is a subsidiary of CNO Financial Group (formerly Conseco).

3. Defendant was established in 1879 in Chicago and focuses on the insurance needs of the retirement market by offering a portfolio of life and health insurance retirement products designed especially for seniors. As of year-end 2010, Defendant had more than 1.3 million policyholders and $13 billion in assets under management.

## JURISDICTION

4. This Court has personal jurisdiction over the Defendant which has transacted business in this Commonwealth, has contracted to supply services or things in this Commonwealth, and/or has caused tortious injury by act or omission in this Commonwealth.

5. This Court has subject matter jurisdiction pursuant to 28 USC § 1332 because the amount in controversy for the Class exceeds $5 million and there is diversity between Plaintiff and Defendant.

## FACTUAL ALLEGATIONS

### A.   The Systemic Denial and/or Delay of Claims

6. Defendant has breached its contracts and/or covenants, as well as willfully and knowingly committed unfair or deceptive acts or practices by systematically (a) delaying payment of benefits; (b) denying valid claims; and (c) refusing to pay the full benefits due on valid claims.

7. Bankers has systemically and indiscriminately denied claims and engaged in an unduly burdensome claims process that has the practical effect of denying the Class their benefits under their Bankers' policies. *See, e.g., Aged, Frail and Denied Care by Their Insurers*, Charles Duhigg, The New York Times (March 26, 2007). One former agent was quoted stating that Bankers "made it so hard to make a claim that people either died or gave up." *Id. See also, Some Long-Term Healthcare Policies Not Paying Up*, Sharyl Attkisson, CBS News (Jan. 5. 2012). This conduct has also breached the terms of Bankers' policies with Plaintiff and the Class.

8. In 2008, 40 states found a "pattern of consumer harm" at Bankers that included unjustified delays and bad recordkeeping. *Id.* "They were able to demonstrate a pattern that appeared to be at least designed to frustrate people," according to the Kansas Insurance Commissioner. *Id.* Other recent state regulatory examinations show the practice has continued unabated as discussed below.

9. Bankers repeatedly and routinely delays the payments of claims submitted by policyholders and/or their healthcare providers on their behalf. In Ms. Glick's case, one invoice for care performed in December 2010 was not paid until May 2011, nearly five months after the care was provided. Moreover, claims made in August 2011 remained unpaid over 11 months later, so this lengthy delay has the same practical effect as a denial because healthcare providers typically bill on a 60-day revolving basis. Recently, Ms. Glick and her family have been forced to pay over $1,000 to her healthcare provider to offset over $2,000 that Bankers owes but has simply not paid for many months.

10. A CBS News analysis found that, in 2010, Bankers' market share was less than 6 percent, but the company drew one-third of the complaints reported by state insurance commissioners. *See Some Long-Term Healthcare Policies Not Paying Up*, CBS News. *Id.* In

addition, California regulators reviewed long-term-care policies (with 2,375 claims filed) during their recent examination, and identified a stunning 518 separate violations (on average approximately 6.5 violations per policy). *See also Aged, Frail and Denied Care*, The New York Times. *Id.* Defendant's claims payment practices are well known among healthcare providers, and as a result, only some home healthcare service providers accept payment from Bankers. As a result, for example, it was difficult for Ms. Glick to locate home healthcare service providers that would accept payment from Bankers for providing her care due to these practices. This has made obtaining healthcare services difficult for Bankers policyholders. *See, e.g.*, In the Matter of Bankers Life & Casualty Company NAIC #61263, Docket No. 4180-SO (Summary Order of Kansas Commissioner of Insurance dated July 19, 2010), at ¶ 20.

11.     As a result, Defendant has improperly retained moneys (and earned income thereon) that are due to Ms. Glick and the Class.

### Bankers' Systematic Denial of Ms. Glick's Claims

12.     On August 16, 2010, Ms. Glick became disabled in accordance with the terms of the policy and subsequently filed a claim for benefits with Bankers. Since then, she has encountered Bankers' systemic and orchestrated program to deny, delay and underpay claims. The result: routine multiple requests for redundant paperwork and an unwarranted denial of valid claims without justification in breach of her contract.

13.     Bankers' policies only require the filing of a valid claim to trigger its duty to pay the benefits under the policy, yet Bankers does not comply with this contractual obligation or its duty to disclose the reason it denies claims. Bankers' denial notices to Ms. Glick failed to satisfy M.G.L. c. 176D § 3(9)(n) by "Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the

offer of a compromise settlement." This is a systemic issue. For example, the California Department of Insurance, in its 2011 market conduct examination (analyzing policy claim files from 2008), identified 98 instances (on 80 policies sampled) where Bankers failed to provide in writing the reasons for a denial of a claim and legal bases for each reason given. Similarly, a July 19, 2010 Summary Order from the Kansas Commissioner of Insurance concluded: "Bankers Life's multiple failures to acknowledge receipt of claims, to promptly investigate claims, to affirm or deny claims and to effectuate prompt and fair claims settlement practices are committed with such frequency to establish a business practice."

14. Bankers' contrivances to indiscriminately deny claims are company practice. For example, The New York Times reported that:

> In lawsuits, complaints and interviews, policyholders contend that [parent company] Conseco, [and] Bankers Life ... denied claims because policyholders failed to submit unimportant paperwork; because daily nursing notes did not detail minute procedures; because policyholders filled out the wrong forms after receiving them from the insurance companies; and because facilities were deemed inappropriate even though they were licensed by state regulators.

See *Aged, Frail and Denied Care,* The New York Times, *Id.*; see also *Some Long-Term Healthcare Policies Not Paying Up*, CBS News, *Id.*

15. Starting on September 28, 2011, Ms. Glick's claims for September 9, 2011 (and thereafter), were denied in writing in accordance with Bankers' systemic (wrongful) practices. The denial was unjustified because (1) she had already been receiving home healthcare benefits under her policy, and the existing Plan of Care developed by Bankers had established that she was "chronically ill"; (2) she had already received 12 months of healthcare benefits (albeit delayed) before Bankers' arbitrary denial of her claims; and (3) her chronic disability and healthcare needs had not changed.

16. Since Bankers had conducted no additional investigation on Ms. Glick's status, its September 28, 2011 denial (and subsequent denials through December 2011) was not only a breach of contract but further violated M.G.L. c. 176D § 3(9)(d) because Bankers refused to pay claims without conducting a reasonable investigation based upon all available information, and § (f) because Bankers failed to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

### Bankers' Failure to Pay Benefits in Accordance with Policy Terms

17. Bankers systemically fails to pay the full benefits due policyholders in accordance with the terms of its policies. For example, Ms. Glick has received letters from Bankers stating that her benefits for the month have been exhausted mid-month, even though this is impossible under her policy (which pays $100 a day for up to 31 days per month). Moreover, in its November 23, 2011 letter reversing the September 28, 2011 and later denials, Bankers confused its own payment obligations under the policy, and states they will pay for care in the amount of 4 hours per day, 7 days a week. Her policy provides for $100 of care per day, not a set hourly amount. Yet, Bankers now pays for only 4 hours of care services per day.

18. Bankers' inability to follow the correct payment schedule creates actual and/or potential problems for Ms. Glick and other similarly situated Class Members. For example, Bankers' practice of haphazardly paying for more than $100 per day on some occasions, or exhausting her Monthly Maximum Benefit before the end of the month on other occasions, jeopardizes benefits from other sources. In addition, Bankers also fails to pay the full amounts due listed on its invoices, without providing any explanation for why less than 100% of claims were paid.

19. Since receiving Ms. Glick's M.G.L. c. 93A demand letter from her attorneys, and failing to make a timely and/or adequate offer of settlement, Bankers has refused to respond to Ms. Glick's attorneys. Instead, on July 13, 2012, Bankers contacted Plaintiff's daughter directly to inform her that "At this time we are unable to respond to [Plaintiff's Counsel]" because Plaintiff's Chapter 93A letter did not serve as a "signed Voluntary Authorization to Disclose Information to Third Party" form. (And, despite her submission of that form, Bankers never responded to the demand letter with her counsel.)

20. At this same time, Bankers stated to Plaintiff's daughter that Bankers "deeply apologize[d] for this oversight and all of the inconvenience," and further noted that Bankers would "re-service" the bills submitted and that Plaintiff would receive at least some additional benefits at a later time.[1]

21. Since Bankers' post-Chapter 93A demand letter communication with Ms. Glick, her daughter, and home health service providers, Bankers has continued to offer only a series of incorrect (and incomplete) payments *directly* to Ms. Glick and her daughter, and to those providers.

### B. Failure to Disclose APR on Modal Premium Payments: Applies to Modal Premium Subclass

22. Bankers has overcharged Ms. Glick and all similarly situated persons who paid premiums on a modal premium basis (the "Modal Premium Subclass"). Bankers charged different amounts for identical insurance policies depending on whether the policyholder paid on an annual, semiannual, quarterly or monthly basis. In charging more money for policyholders who paid premiums on a modal basis, Bankers (a) charged premiums greater than the annual

---

[1] Bankers' communication was never provided directly to Plaintiff's attorneys, nor did Bankers ever contact Plaintiff's attorneys to inform them that Bankers was responding separately to issues raised in Ms. Glick's Chapter 93A demand letter.

amount stated in the policy, (b) failed to disclose the amount of the modal premium charges, and/or (c) failed to disclose the annual percentage rate (APR) policyholders were paying.

23.     In Ms. Glick's case, her policy specified an annual premium of $2,224.56. However, the monthly payment service plan provided for monthly payments of $191.94, or $2,303.28 annually. The latter figure and the $78.72 of modal premium charges per year are not disclosed in the policy. The APR under the monthly payment plan is 7.7 percent, but that rate is not disclosed in the policy. Ms. Glick paid $3,647 total premiums on a monthly basis, and was thus overcharged for her premiums in the amount of $125 from January 2009 to July 2010 (after which she became disabled and stopped paying premiums per the policy terms).

## CLASS ACTION ALLEGATIONS

24.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and the following subclasses (sometimes referred to collectively herein as the "Class"):

   a) the nationwide "Contract Subclass" defined as:

   All policyholders owning individual accident and health policies issued by Defendant that submitted benefit claims to Defendant that were subject to delays or denials. Excluded from the Class are Defendant, employees or agents of Defendant, employees of any members of the same insurance holding company system, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

   b) the nationwide "Modal Premium Subclass" defined as:

   All policyholders who paid their Bankers policies on a monthly basis and were charged more than the annual premium listed on their policy. Excluded from the Class are Defendant, employees or agents of Defendant, employees of any members of the same insurance holding company system, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

   c) the "Consumer Act Subclass" defined as:

All policyholders residing in states with consumer protection statutes that prohibit Bankers' conduct in denying, delaying and/or underpaying benefits and/or charging interest on modal premium payments. Excluded from the Class are Defendant, employees or agents of Defendant, employees of any members of the same insurance holding company system, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

25. Plaintiff seeks damages, including multiple damages, and equitable relief on behalf of all Class members. Plaintiff expressly disclaims any intent to request in this suit any recovery for personal injuries suffered or which may be suffered by any Class member.

26. <u>Numerosity of the Class</u>: There were more than 500,000 individual accident & health insurance Bankers policyholders claims filed in the past three years and, therefore, thousands of members comprise the subclasses. They are so numerous that joinder of all members is impracticable.

27. <u>Typicality of Claims</u>: Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and all other members of the Class have sustained damages and injuries arising out of Defendant's systemic business practice of wrongfully delaying payment of benefits, arbitrarily denying valid claims, failing to pay the correct amount of benefits due and charging undisclosed charges and interest rates on modal premium payments.

28. <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class; she has no interests which are contrary to or in conflict with those of the Class she seeks to represent; and she has retained attorneys experienced in the prosecution of complex contract, tort and insurance class actions.

29. <u>Existence and Predominance of Common Questions of Law and Fact</u>: Common questions of law and fact exist as to all members of the Class, and predominate over any individual questions. Among such common questions of law and fact are:

9

a) Whether Defendant breached its individual accident and health insurance contracts by the acts and/or omissions alleged in this Complaint;

b) Whether Defendant violated the implied covenants of good faith and fair dealing by the acts and/or omissions alleged in this Complaint;

c) Whether Defendant has been unjustly enriched by such improper acts and/or omissions alleged in this Complaint;

d) Whether a constructive trust should be established for the benefit of Plaintiff and the Class;

e) Whether Defendant violated state consumer protection statutes;[2]

f) Whether Defendant failed to disclose the APR charged on modal premium payments;

---

[2] *See* Ala. Code § 8-19-1 *et seq.* (Alabama); Alaska Stat. § 45.50.471 *et seq.* (Alaska); Ariz. Rev. Stat. Ann. § 44-1521 *et seq.* (Arizona); Ark. Code Ann. § 4-88-101 *et seq.* (Arkansas); Cal. Bus. & Prof. Code § 17200 *et seq.*, and Cal. Bus. & Prof. Code § 17500 *et seq.* (California); Colo. Rev. Stat. § 6-1-105 *et seq.* (Colorado); Conn. Gen. Stat. § 42-1106 (Connecticut); Del. Code Ann. Tit. 6, § 2511 *et seq.* (Delaware); D.C. Code Ann. § 28-3901 *et seq.* (District of Columbia); Fla. Stat. Ann. § 501.201 *et seq.* (Florida); Ga. Code Ann. § 10-1-390 *et seq.* (Georgia); Haw. Rev. Stat. § 481A-1 *et seq.* and Haw. Rev. Stat. § 480-1 *et seq.* (Hawaii); Idaho Code § 48-601 *et seq.* (Idaho); Ill. Statutes, 815 ILCS 505/1 *et seq.* (Illinois); Ind. Stat. § 24-5-0.5 et seq. (Indiana); Kan. Stat. Ann § 50-623 *et seq.* (Kansas); Ky. Rev. Stat. § 367.110 *et seq.* (Kentucky); La. Rev. Stat. Ann. § 51:1401 *et seq.* (Louisiana); Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.* (Maine); Md. Com. Law Code Ann. § 13-101 *et seq.*, Md. Com. Law Code Ann. § 13-301 *et seq.*, Md. Com. Law Code Ann. § 13-408 *et seq.* (Maryland); Mich. Stat. Ann § 445.901 *et seq.*, Mich. Stat. Ann. § 445.901 *et seq.* (Michigan); Minn. Stat. § 325F.67 *et seq.*, Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3 *et seq.* (Mississippi); Mo. Rev. Stat. § 407.010 *et seq.* (Missouri); Mont. Code Ann. § 30-14-101 *et seq.* (Montana); Neb. Rev. Stat. § 59-1601 *et seq.* (Nebraska); Nev. Rev. Stat. § 41.600 and Nev. Rev. Stat. § 598.0903 *et seq.* (Nevada); N.H. Rev. Stat. Ann. § 358-A:1 *et seq.* (New Hampshire); N.J. Rev. Stat. § 56:8-1 *et seq.*, N.J. Rev. Stat. § 56:12-1 *et seq.* (New Jersey); N.M. Stat. Ann. § 57-12-1 *et seq.* (New Mexico); N.Y. Gen. Bus. Law. § 349 *et seq.* (New York); N.C. Gen. Stat. § 75-1 *et seq.* (North Carolina); N. D. Cent. Code § 51-15-01 *et seq.* (North Dakota); Ohio Rev. Code Ann. § 1345.01 *et seq.* (Ohio); Okla. Stat. Tit. 15, § 751 *et seq.* (Oklahoma); Ore. Rev. Stat. § 646.605 *et seq.* (Oregon); Penn. Stat. § 201-1 *et seq.* (Pennsylvania); R.I. Gen. Laws § 6-13.1-1 *et seq.* (Rhode Island); S.C. Code Ann. § 39-5-10 *et seq.* (South Carolina); S.D. Codified Laws Ann. § 37-24-1 *et seq.* (South Dakota); Tenn. Code Ann. § 47-18-101 *et seq.* (Tennessee); Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (Texas); Vt. Stat. Ann. Tit. 9, § 2451 *et seq.* (Vermont); Va. Code Ann. § 59.1-196 *et seq.* (Virginia); Wash. Rev. Code § 19.86.010 *et seq.* (Washington); W. Va. Code § 46A-6-101 *et seq.* (West Virginia); Wisc. Stat. § 100.18 (Wisconsin); and Wyo. Stat. § 40-12-101 *et seq.* (Wyoming).

g) Whether, as a result of the determination of the foregoing questions, damages and/or equitable relief should be granted against Defendant; and

h) Determination of the appropriate measure and means of calculating and allocating monetary damages.

30. <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the claims presented by this Complaint and will prevent the undue financial, administrative, and procedural burdens on the parties and on the Court which individual litigation would impose. The prosecution of separate actions by the individual members of the class would create a risk of inconsistent adjudications in the same or different jurisdictions and/or adjudications that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair their ability to protect their interests.

## COUNT I
## BREACH OF CONTRACT

31. Plaintiff re-alleges the foregoing paragraphs and incorporates them by reference as if they were fully set forth herein.

32. Plaintiff and the Class entered into insurance contracts with Defendant, in which they promised to pay premiums in return for Defendant promising, *inter alia,* to pay benefits in a timely manner for valid claims.

33. Plaintiffs have performed their part of these insurance contracts.

34. Defendant has breached its insurance contracts with Plaintiff and the Contract Subclass by not paying benefits in a timely manner, systematically and arbitrarily denying claims for benefits, and failing to pay the full amount of benefits due under its contracts.

35. Defendant has also breached its insurance contracts with Plaintiff and the Modal

Premium Subclass by charging undisclosed charges and APRs on modal premium payments.

36. The Defendant's breaches of contract have damaged Plaintiff, the Contract Subclass and the Modal Premium Subclass in amounts to be proven at trial.

## COUNT II
## BREACH OF THE IMPLIED COVENANTS
## OF GOOD FAITH AND FAIR DEALING

37. Plaintiff re-alleges the foregoing paragraphs and incorporates them by reference as if they were fully set forth herein.

38. Plaintiff and the Class entered into insurance contracts with Defendant, in which they promised to pay premiums in return for Defendant promising, *inter alia,* to pay benefits in a timely manner for valid claims.

39. Plaintiff and the Class have performed their part of these insurance contracts.

40. Even if Defendant has not breached an express provision of its insurance contracts, it has breached the implied covenants of good faith and fair dealing with Plaintiff and the Contract Subclass by not paying benefits in a timely manner, systematically and arbitrarily denying claims for benefits, and failing to pay the full amount of benefits due under its contracts.

41. Even if Defendant has not breached an express provision of its insurance contracts, it has breached the implied covenants of good faith and fair dealing with Plaintiff and the Modal Premium Subclass by charging undisclosed charges and APRs on modal premium payments.

42. The Defendant's breaches of the implied covenants of good faith and fair dealing have damaged Plaintiff, the Contract Subclass and the Modal Premium Subclass in amounts to be proven at trial.

## COUNT III
## UNJUST ENRICHMENT AND IMPOSITION
## OF A CONSTRUCTIVE TRUST

43. Plaintiff re-alleges the foregoing paragraphs and incorporates them by reference as if they were fully set forth herein.

44. As a result of the special relationship between the parties and the facts and wrongful conduct alleged above, a constructive trust should be established over interest on delayed payments, the improperly denied benefits and underpaid benefits.

45. Because Defendant will be unjustly enriched if it is allowed to retain such funds, a constructive trust should be imposed on all monies it wrongfully obtained.

46. Plaintiff and the other Class members have no adequate remedy at law.

## COUNT IV
## INJUNCTIVE AND/OR DECLARATORY RELIEF

47. Plaintiff re-alleges the foregoing paragraphs and incorporates them by reference as if they were fully set forth herein.

48. Injunctive relief on behalf of the Plaintiff and the Class is necessary to force an end to Bankers' systemic misconduct.

## COUNT V
## UNFAIR AND DECEPTIVE BUSINESS PRACTICES

49. Plaintiff re-alleges the foregoing paragraphs and incorporates them by reference as if they were fully set forth herein.

50. Plaintiff served a demand letter on Bankers pursuant to M.G.L. c. 93A and all other similar consumer protection statutes, but Bankers refused to timely respond or make a reasonable offer of settlement to the named Plaintiff or the Consumer Act Subclass.

51. Plaintiff and the Consumer Act Subclass entered into insurance contracts with

Defendant, in which they promised to pay premiums in return for Defendant promising, *inter alia,* to pay benefits in a timely manner for valid claims.

52.  Plaintiff and the Consumer Act Subclass have performed their part of these insurance contracts.

53.  Defendant's pattern and practice of indiscriminately denying claims, delaying payments and failing to provide factual or legal support for denials are separate and independent unfair and/or deceptive business practices that violate M.G.L. c. 93A and each of the other states' consumer protection statutes.

54.  Defendant's pattern and practice of charging undisclosed interest on those policyholders who pay their premiums on a modal basis violate M.G.L. c. 93A and each of the other states' consumer protection statutes.

55.  Plaintiff and the Consumer Act Subclass have been damaged in an amount to be determined at trial.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant for the following relief:

1.  A judgment for the damages sustained by Plaintiff and the Subclasses and for any additional damages and other monetary relief provided by applicable law, including but not limited to multiple damages;

2.  The costs of this suit, including, but not limited to, reasonable attorneys' fees, costs and expert witness fees;

3.  Pre-judgment interest;

4.  Injunctive and declaratory relief; and

5.  Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury for all claims so triable.

Dated: August 23, 2012

Respectfully submitted,

Fay Glick, on behalf of herself and all others similarly situated,

By her Attorneys,

**ADKINS, KELSTON & ZAVEZ, P.C.**

Jason Adkins, BBO #558360
John Peter Zavez, BBO #555721
Brendan Bridgeland, BBO #648313
90 Canal Street, 5th Floor
Boston, MA 02114
Telephone: (617) 367-1040